IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TONYA L. KINZINGER-LIGNON, et al.,

   Plaintiffs,

     v.

DELTA AIRLINES, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2282-TWT

ORDER

This is a personal injury action. It is before the Court on the Defendant Delta Airlines' Motion for Summary Judgment [Doc. 18]. For the reasons set forth below, the Court GRANTS the Defendant's motion.

I. Background

Tonya Kinzinger-Lignon and her husband Bernard Kinzinger (collectively, the "Kinzingers") reside in France. On June 15, 2009, the Kinzingers boarded a flight from Paris, France to Atlanta, Georgia. After spending five days with family in Atlanta, the Kinzingers flew from Atlanta to Los Angeles. On June 29, 2009, the Kinzingers boarded a Delta Airlines ("Delta") flight from Los Angeles to Atlanta. During takeoff, the pilot abruptly stopped the airplane and returned to the terminal

gate because of engine problems. As a result of the sudden braking, Ms. Kinzinger-Lignon alleges that she suffered a back injury. She did not report the injury to Delta at the time. After the first flight was aborted, the Kinzingers flew from Los Angeles to Atlanta on a Delta flight later in the day on June 29, 2009. After spending approximately two months in Georgia visiting family, the Kinzingers returned to France sometime between August 25 and August 30, 2009.

After an investigation, Delta determined that the aborted takeoff was the result of an engine failure caused by a defective compressor blade. (Varner Dep. at 68-69.) Airfoil Technologies, Inc. ("ATI") had remanufactured the compressor blade and shipped it to Delta in 2008. ATI attached an airworthiness certificate to the shipment. (Varner Dec., Ex. A.)

On June 24, 2011, the Kinzingers filed this lawsuit against Delta in Fulton County State Court. The lawsuit seeks damages for injuries Tonya Kinzinger-Lignon suffered aboard Delta's June 29, 2009 flight from Los Angeles to Atlanta. Bernard Kinzinger also seeks damages for loss of consortium. On July 13, 2011, the Defendant removed the action to this Court [Doc. 1]. On February 27, 2012, Delta filed a Motion for Summary Judgment [Doc. 18]. Delta argues that federal law preempts the Plaintiffs' state law negligence claims and that the Montreal Convention does not apply to this action.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Negligence

The Defendant contends that the Plaintiffs' state law negligence claims are preempted by the Federal Aviation Act. The Defendant concedes, however, that "state tort law remedies exist if premised upon a violation of federal law." (Def.'s Reply in Supp. of Def.'s Mot. for Summ. J., at 2); see also Bieneman v. City of Chicago, 864 F.2d 463, 473 (7th Cir. 1988) ("[T]he state may employ damages remedies *only* to enforce federal requirements."). In response, the Plaintiffs contend that Delta violated

14 C.F.R. § 43.9 (2004), 14 C.F.R. § 91.407 (1963), 14 C.F.R. § 91.417 (2007), and 14 C.F.R. § 91.403 (2006).[1] Generally, the Plaintiffs contend that Delta violated these regulations by failing to track the maintenance history of the defective compressor blade.

First, the Plaintiffs claim that Delta violated 14 C.F.R. § 43.9(a). That regulation provides that:

> Except as provided in paragraphs (b) and (c) of this section, each person who maintains, performs preventive maintenance, rebuilds, or alters an aircraft, airframe, aircraft engine, propeller, appliance, or component part shall make an entry in the maintenance record of that equipment containing the following information:
> (1) A description (or reference to data acceptable to the Administrator) of work performed.
> (2) The date of completion of the work performed.
> (3) The name of the person performing the work if other than the person specified in paragraph (a)(4) of this section.
> (4) If the work performed on the aircraft, airframe, aircraft engine, propeller, appliance, or component part has been performed satisfactorily, the signature, certificate number, and kind of certificate held by the person approving the work. The signature constitutes the approval for return to service only for the work performed.

14 C.F.R. § 43.9(a). Subsection (b) of § 43.9, however, provides that "holder[s] of an air carrier operating certificate or an operating certificate" must make an entry of "the maintenance, preventive maintenance, rebuilding, and alteration, on aircraft,

---

[1] The parties agree that California law governs the Plaintiffs' tort claims. (See Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 10; Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 2-3.)

airframes, aircraft engines, propellers, appliances, or component parts which it operates in accordance with the applicable provisions of Part 121 or 135 of this chapter, as appropriate." 14 C.F.R. § 43.9(b). As a commercial operator, Delta has an Air Carrier Certificate. See 14 C.F.R. § 119.5 (1997). Air Carrier Certificate holders are subject to the provisions of 14 C.F.R. § 121. Thus, subsection (b), not subsection (a), applies to the Defendant. To the extent the Plaintiffs allege a violation of § 43.9(b),[2] the Kinzingers do not specify the "provisions of Part 121" with which the Defendant failed to comply. For these reasons, there is no issue of material fact as to the Defendant's violation of 14 C.F.R. § 43.9.

Next, the Plaintiffs allege that the Defendant violated 14 C.F.R. § 91.407. That section prohibits operation of an aircraft without documentation required under 14 C.F.R. § 43.9 and 14 C.F.R. § 43.11. As discussed above, 14 C.F.R. § 43.9 does not apply to the Defendant. 14 C.F.R. § 43.11 requires "[t]he person approving or disapproving for return to service an aircraft, airframe, aircraft engine, propeller, appliance, or component part after any inspection" to make certain records. 14 C.F.R. § 43.11(a). The Plaintiffs have offered no evidence that Delta failed to make any of the required inspection records. Indeed, the Plaintiffs merely point out that the

---

[2]The Plaintiffs' Response does not mention 14 C.F.R. § 43.9(b). The Complaint does not cite any federal regulation.

Defendant did not know where the compressor blades were used before they were remanufactured by ATI. Thus, there is no issue of material that the Defendant violated 14 C.F.R. § 91.407.

Next, the Plaintiffs claim Delta violated 14 C.F.R. § 91.417. Specifically, the Plaintiffs allege that the Defendant failed to maintain records related to the faulty compressor blade. 14 C.F.R. § 91.401, however, provides that "[s]ections 91.405, 91.409, 91.411, *91.417*, and 91.419 of this subpart do not apply to an aircraft maintained in accordance with a continuous airworthiness maintenance program as provided in part 121." 14 C.F.R. § 91.401 (emphasis added). As discussed above, Delta holds an Air Carrier Certificate and is subject to the provisions of 14 C.F.R. § 121. Thus, 14 C.F.R. § 91.417 does not apply to the Defendant.

Finally, the Plaintiffs contend that Delta violated 14 C.F.R. § 91.403. That section requires Delta to comply with the airworthiness limitations section of the manufacturer's maintenance manual. The maintenance manual provided by General Electric, the manufacturer of the compressor blades, states that if any blade in a set has a dove tail separation or a blade airfoil root separation, the entire set of blades must be discarded. (See Varner Dep. at 61.) The Plaintiffs offer no evidence, however, that any of the compressor blades associated with the Plaintiffs' injuries had a dove tail separation or a blade airfoil root separation. Rather, the Plaintiffs simply note that

Delta does not know whether any of the compressor blades had a dove tail separation or a blade airfoil root separation before ATI rebuilt the blades. The *lack* of evidence supporting the Plaintiffs' theory that Delta failed to comply with the manufacturer's maintenance manual cannot create an issue of material fact. For these reasons, the Defendant is entitled to summary judgment on the Plaintiffs' negligence claims.

    B.    <u>Res Ipsa Loquitur</u>

The Defendant argues that there is no issue of material fact as to the Plaintiffs' *res ipsa loquitur* claim. "The doctrine of *res ipsa loquitur* has three conditions: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." <u>Ybarra v. Spangard</u>, 25 Cal. 2d 486, 489 (1944) (internal quotations omitted). Delta contends that the Plaintiffs' injuries were not caused by an instrumentality exclusively within the Defendant's control. Specifically, Delta argues that there is no issue of material fact that ATI controlled the compressor blade and shipped it to Delta in defective condition in 2008. The Plaintiffs have offered no evidence contradicting Delta's explanation of the accident or showing that Delta exercised exclusive control over the defective blade.

See Olson v. Whitthorne & Swan, 203 Cal. 206, 208 (1928) ("To render the doctrine [of *res ipsa loquitur*] applicable it must be shown that the instrumentality causing the injury was under the control of the defendant and that the injury was caused by some act incident to that control.") (internal quotations omitted). Thus, *res ipsa loquitur* is not applicable in this case.

    C.    Montreal Convention

Delta also argues that the Montreal Convention does not apply because the Plaintiffs' flight was not an "international carriage by air." The Montreal Convention defines "international carriage" as:

> [A]ny carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage . . . are situated either within the territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

Convention for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734. The Defendant claims that the Kinzingers' flight from Los Angeles to Atlanta was not an "international carriage" because there was no agreement between the parties to end the trip at an international destination. "Whether the trip was international travel within the scope of the article 1(2) of the Montreal

Convention is ordinarily governed by objective evidence as opposed to the uncommunicated subjective beliefs of the parties." Gustafson v. American Airlines, Inc., 658 F. Supp. 2d 276, 285 (D. Mass. 2009). "Objective indicators of the parties' agreement include the PNR [passenger name report], the length of the layover, the itinerary, the electronic tickets, the boarding passes and the baggage tag for the return flights." Id. at 286.

Here, the Plaintiffs have not produced any documentation suggesting that their flight from Los Angeles to Atlanta was part of an international trip. Indeed, the Plaintiffs have failed to produce a ticket, boarding pass, or itinerary related to their flight from Atlanta to France. The Plaintiffs do not even know whether that flight was operated by Delta or Air France. (See Kinzinger Dep. at 58.) Further, the Plaintiffs remained in Atlanta for approximately *two months* after arriving from Los Angeles on June 29, 2009. See In re Air Crash Disaster of Aviateca Flight 901 Near San Salvador, 29 F. Supp. 2d 1333, 1342 (S.D. Fla. 1997) ("Common sense dictates that when a traveler plans such a short layover between the parts of a journey, the traveler regards the layover as merely an intermediate stopping place and not his or her destination."); In re Air Crash Disaster at Warsaw, Poland, 748 F.2d 94, 96 (2d Cir. 1984) (finding layover of more than 24 hours indicated that domestic leg of travel was separate from international leg). The Plaintiffs' supposed "layover" in Atlanta lasted

longer than the rest of their visit to the United States. Indeed, the Plaintiffs specifically planned to visit Atlanta during July and August to accommodate a separate "vacation and visit at the home of [Tonya Kinzinger-Lignon's] mother in Georgia." (Pascaline Aff. ¶ 4.) For these reasons, the Plaintiffs' flight from Los Angeles to Atlanta was not an "international carriage by air" under the Montreal Convention.

### D. Loss of Consortium

As discussed above, there is no issue of material fact as to Tonya Kinzinger-Lignon's negligence, *res ipsa loquitur*, and Montreal Convention claims. Thus, Bernard Kinzinger's derivative loss of consortium claim must also be dismissed. See Blain v. Doctor's Co., 222 Cal. App. 3d 1048, 1067 (Cal. App. 3d Dist. 1990) (where plaintiff had no cause of action in tort, plaintiff's spouse had no claim for loss of consortium).

### IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 18].

SO ORDERED, this 10 day of May, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge